In re:
RODOLFO LOVATO and
LISA LOVATO,
    Debtors.                                                     No. 7-07-10287 SA

ALBERT SANCHEZ,
    Plaintiff,
v.                                                            Adv. No. 07-1072 S
RODOLFO LOVATO and
LISA LOVATO,
    Defendants.

**MEMORANDUM OPINION MODIFYING PREVIOUS MEMORANDUM OPINION
ON LIABILITY AND DISMISSING COMPLAINT**

    On October 15, 2009, the Court entered a memorandum opinion on the issue of liability in this adversary proceeding, stating that "the Court finds that Lovato is liable to Sanchez and the liability is non-dischargeable." Memorandum Opinion in Support of Judgment of Liability Against Rodolfo Lovato and Order for Supplemental Hearing on Damages (Memo 1), at 1. Doc 39. In that decision, the Court found that Debtor Rodolfo Lovato (Lovato or Debtor) had effectively deceived Plaintiff Alfred Sanchez (Sanchez or Plaintiff) by permitting Tomas Torres (Torres) to obtain a building permit from Bernalillo County under the name of Lovato's company, Universal Builders, and by not informing Sanchez at any point that Torres was not a New Mexico licensed contractor when he (Lovato) had a duty to do so. Id. at 5-7. The Court also concluded that Sanchez had justifiably relied on Lovato's misrepresentations, id. at 7-8, and in effect found that Sanchez had suffered as yet unspecified damages as a result of

Page 1 of 15

the misrepresentation. Id. at 8-9. The Court has now reconsidered its conclusions[1], and has determined, for the reasons set forth below in this memorandum opinion (Memo 2), that (1) Plaintiff did not rely at all, and certainly did not rely justifiably, on Torres having a contractor's license to do the work, and (2) the (undeniable) damage that Sanchez suffered was not in fact caused by Lovato's deception.[2] Thus, the Court concludes Lovato is not liable to Sanchez on the grounds of fraud (§523(a)(2)(A)). The Court further concludes that Lovato is not liable to Sanchez either on the basis of fiduciary duty (§523(a)(4)) or on the basis of malicious and wilful injury (§523(a)(6)). The Court will therefore enter a judgment

---

[1] Because no judgment has yet been entered, the Court is not precluded from amending its findings and conclusions. Rule 9023, F.R.B.P., incorporating Rule 59(a)(2), F.R.Civ.P., which provides in relevant part that "[a]fter a nonjury trial, the court may, on motion for a new trial, ... amend finding of fact and conclusions of law or make new ones...." See Arms v. Keybank (In re Arms), 238 B.R. 259, 261 (Bankr. D. Vt. 1999)("Bankruptcy courts have been held to possess sufficient authority, pursuant to their equitable powers under § 105 of the Bankruptcy Code, to modify or vacate their own interlocutory orders. See, e.g., Coggin v. Coggin (In re Coggin), 30 F.3d 1443 (11th Cir. 1994) ("The bankruptcy court has the equitable power to correct, modify or vacate its own interlocutory orders.")).

[2] Rule 9023(d), F.R.B.P., incorporating Rule 59(d), F.R.Civ.P., New Trial on the Court's Initiative or for Reasons Not in the Motion, requires the Court to "specify the reasons [for granting a new trial on its own motion]". Since the Court is not ordering a new trial, the requirement is not applicable. Nevertheless, the Court's reason for amending its conclusions and its overall decision stems from its closer examination of the issues of reliance and causation, which it addressed far too summarily in Memo 1, and now addresses in this Memo 2.

dismissing the complaint.[3]

It is clear that Sanchez' decision to enter into a contract with Torres stemmed largely from the fact that Torres' bid of $104,000 for the work, compared with the estimate of Homes by Marie[4] of approximately $250,000 and another bid for between $140,000 and $150,000, looked like a spectacularly good deal. Sanchez also relied on his (Sanchez') uncle's recommendation of Torres and on Mr. Puckett's review of the numbers with him and Puckett's assurance that the Torres bid was reasonable. Whether the allure of paying almost 60% less for the project would have led Sanchez to disregard Torres' lack of a contractor's license is questionable at best, particularly since Sanchez did not even know of the requirement of a contractor's license and in any event did not even ask Torres if he had one.

It is also clear that Sanchez' loss did not derive from Torres' lack of a contractor's license. To begin with, there was no proof that having a contractor's license would have made Torres competent. Torres having a license would have made Torres exactly but no more than that – licensed. Being licensed does

---

[3] The Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157; this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I); and these are findings of fact and conclusions of law as may be required by F.R.B.P. 7052.

[4] Inexplicably the Court identified Homes by Marie as Homes by Maria in Memo 1. The Court apologizes for the error.

not mean being competent. Instead, Sanchez did not sufficiently monitor the project and ensure that it was competently done. He admitted that he was not competent himself to perform those tasks, and he did not hire anyone to do them for him. He was pouring money into the project without knowing what was going on. None of this is attributable to Lovato.

Similarly, at no time was there a pre-existing fiduciary relationship with Lovato that would engender liability on the part of Lovato to Sanchez. And finally, there was no evidence that Lovato intended to harm Sanchez or his interests.

**A.** **The "Fraud Claim", section 523(a)(2)(A).**

Sanchez has not proved reliance, much less justifiable reliance, even with respect to the limited area of whether Torres was a licensed contractor, which by itself would be insufficient to support a judgment of nondischargeability. Nor has he proved loss causation. The section 523(a)(2)(A) claim will therefore be dismissed.

Section 523(a)(2)(A) provides as follows:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud....

**A1.** **Reliance and Justifiable Reliance.**

In <u>Field v. Mans</u>, 516 U.S. 59 (1995), the United States

Supreme Court opined that section 523(a)(2)(A) was designed to deal with the common law torts of false pretenses, false representation, and fraud. Id. at 69. The Court then looked to the Restatement (Second) of Torts (1976) ("Restatement") as definitive of the meanings:

> The section on point [in the Restatement] dealing with fraudulent misrepresentation states that both actual and "justifiable" reliance are required. [Restatement (Second) of Torts] § 537.... Here a contrast between a justifiable and reasonable reliance is clear: "Although the plaintiff's reliance on the misrepresentation must be justifiable ... this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id., § 545A, Comment b. Justifiability is not without some limits, however. As a comment to § 541 explains, a person is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses.

Id. at 70-71. The Court then continued to examine the modern authorities on tort law:

> Similarly, the edition of Prosser's Law of Torts available in 1978 (as well as its current successor) states that justifiable reliance is the standard applicable to a victim's conduct in cases of alleged misrepresentation and that "[i]t is only where, under

> the circumstances, the facts should be apparent to one
> of his knowledge and intelligence from a cursory
> glance, or he has discovered something which should
> serve as a warning that he is being deceived, that he
> is required to make an investigation of his own."  W.
> Prosser, Law of Torts § 108, p. 718 (4th ed. 1971);
> (footnotes omitted); <u>accord</u>, W. Keeton, D. Dobbs, R.
> Keeton, & D. Owen, Prosser and Keeton on Law of Torts §
> 108, p. 752 (5th ed. 1984) (Prosser & Keeton).  Prosser
> represents common-law authority as rejecting the
> reasonable person standard here, stating that "the
> matter seems to turn upon an individual standard of the
> plaintiff's own capacity and the knowledge which he
> has, or which may fairly be charged against him from
> the facts within his observation in the light of his
> individual case."  Prosser, supra, § 108, at 717;
> <u>accord</u>, Prosser & Keeton, § 108, at 751[.]

<u>Id.</u> at 71-72.  The Court ruled that for section 523(a)(2)(A) purposes a plaintiff must prove justifiable, but not reasonable, reliance.  <u>Id.</u> at 74.

Based on the Court's observation of Plaintiff during his testimony, and also based on the testimony of other witnesses about Mr. Sanchez, the Court easily concludes that Plaintiff is an intelligent, educated person.  He is employed by the United States Department of Defense at Boeing Corporation as a quality assurance technician, a position which the Court assumes requires a rather exacting set of standards applied to complex manufacturing and/or performance standards.  Sanchez was clearly capable of detecting whether Torres had a contractor's license – he could have simply asked to see it – if he had been aware of that requirement.  The fact that he was not even aware of the requirement (for what that was worth) demonstrates that he could

Page 6 of  15

not have relied on Torres obtaining the building permit from the county to demonstrate that Torres had a contractor's license. Compare Johnson v. Riebesell (In re Riebesell), 586 F.3d 782, 792 (10th Cir. 2009) ("Even under the 'justifiable' test, however, the plaintiff must 'use his senses' and at least make 'a cursory examination or investigation' of the facts of the transaction before entering into it.")(Citing Field, 516 U.S. at 71.)

In summary, the Court finds that Plaintiff 1) did not actually rely on any of Debtor's (non)representations and 2) if he had, the reliance would not have been justifiable.

**A2. Loss Causation.**

One element of a section 523(a)(2)(A) claims is the proof that the debtor's representation caused the creditor to sustain a loss. Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1373 (10th Cir. 1996).

> As Field teaches, § 523(a)(2) requirements must be determined under common law tort principles. For this reason, a damage requirement is uniformly read into § 523(a)(2)(A), even though no express inclusion of such a requirement appears in the text of that Code section. We attribute the presence of the requirement that "resulting injury" proximately caused by alleged fraudulent conduct is included as a requirement in a § 523(a)(2)(A) claim to the fact that this is an element which is necessary for the proof of common law fraud generally.

Woodstock Housing Corp. v. Johnson (In re Johnson), 242 B.R. 283, 292 (Bankr. E.D. Pa. 1999). See also Domann v. Vigil, 261 F.3d 980, 984 (10th Cir. 2001)("[U]nder New Mexico law, proximate cause

Case 07-01072-s    Doc 44    Filed 02/11/11    Entered 02/11/11 11:22:16 Page 7 of 15

is a necessary element to any recovery in tort.")(Citation omitted.)  Accord Cain v. Champion Window Co. of Albuquerque, LLC, 2007-NMCA-085, ¶25, 142 N.M. 209, 216, 164 P.3d 90, 97 (Ct. App. 2007)(A defendant is liable for damages proximately caused by fraudulent misrepresentation.)(Citing UJI 13-1633 NMRA.)

To prove fraud under the Restatement, a plaintiff must prove "proximate causation", which consists of both "causation in fact" and "legal causation."  See Gem Ravioli, Inc. v. Creta (In re Creta), 271 B.R. 214, 219 (1st Cir. BAP 2002).

"Causation in fact" requires that the plaintiff's reliance on the misrepresentations be a "substantial factor in determining the course of the conduct that results in [the] loss." Restatement § 546.

> [Section 546] is concerned with the question of whether
> the misrepresentation made by the defendant has caused
> the plaintiff's loss at all.
> ...
> If the misrepresentation has not in fact been relied
> upon by the recipient in entering into a transaction in
> which he suffers pecuniary loss, the misrepresentation
> is not in fact a cause of the loss under the rule
> stated in this Section.  If the misrepresentation has
> in fact induced the recipient to enter into the
> transaction, there is causation in fact of the loss
> suffered in the transaction; and the question becomes
> one of whether the loss is of a kind for which the
> maker is legally responsible.

Id., cmt. a.

"A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to

result from the reliance." Id. § 548A.

> Not all losses that in fact result from the reliance
> are, however, legally caused by the representation. In
> general, the misrepresentation is a legal cause only of
> those pecuniary losses that are within the foreseeable
> risk of harm that it creates.
> ...
> Pecuniary losses that could not reasonably be expected
> to result from the misrepresentation are, in general,
> not legally caused by it and are beyond the scope of
> the maker's liability. This means that the matter
> misrepresented must be considered in the light of its
> tendency to cause those losses and the likelihood that
> they will follow.

Id., cmts. a and b.

An example of "loss causation" is found in the Seventh Circuit securities fraud case[5] of Bastian v. Petren Resources Corp., 892 F.2d 680 (7th Cir.), cert. denied, 496 U.S. 906 (1990).

> In 1981 the plaintiffs invested $600,000 in oil and gas
> limited partnerships promoted by the defendants. The
> plaintiffs allege that, had it not been for the
> offering memoranda's misrepresentations and misleading
> omissions concerning the defendants' competence and
> integrity, the plaintiffs would not have invested in
> these partnerships, which by 1984 were worthless.

Id. at 682. The district court dismissed for failure to allege "loss causation." The Seventh Circuit commented:

---

[5] The Seventh Circuit commented that "loss causation" is the same standard common law fraud rule borrowed for use in securities fraud cases. Bastian, 892 F.2d at 683-84. It is an instance of the common law's requirement that a tort plaintiff prove causation. Id. "No hurt, no tort." Id. (Citation omitted.) Since a securities law analysis of loss causation is based on common law, that analysis should apply equally to common law, non-securities law cases.

Case 07-01072-s    Doc 44    Filed 02/11/11    Entered 02/11/11 11:22:16 Page 9 of 15

> The plaintiffs alleged that they invested in the
> defendants' limited partnerships because of the
> defendants' misrepresentations, and that their
> investment was wiped out. But they suggest no reason
> why the investment was wiped out. They have alleged
> the cause of their entering into the transaction in
> which they lost money but not the cause of the
> transaction's turning out to be a losing one.

Id. at 684. The court rejected the arguments:

> If the plaintiffs would have lost their investment
> regardless of the fraud, any award of damages to them
> would be a windfall.
> ...
> "Loss causation" is an exotic name-perhaps an
> unhappy one, for the standard rule of tort law that the
> plaintiff must allege and prove that, but for the
> defendant's wrongdoing, the plaintiff would not have
> incurred the harm of which he complains. ... If the
> defendants' oil and gas ventures failed not because of
> the personal shortcomings that the defendants concealed
> but because of industry-wide phenomena that destroyed
> all or most such ventures, then the plaintiffs, given
> their demonstrated desire to invest in such ventures,
> lost nothing by reason of the defendants' fraud and
> have no claim to damages.

Id. at 684-85. (Citations omitted.) The Seventh Circuit affirmed dismissal of the case.

Bastian and the other authorities cited above show that a Plaintiff must demonstrate a direct link between the misrepresentation and the actual damages suffered. "But for" causation alone is not enough. See, e.g., U.S. v. St. Louis University, 336 F.3d 294, 302 (4th Cir.), cert. denied, 540 U.S. 1050 (2003) (SLU's claim against the government requires evidence of proximate cause in addition to evidence of but-for causation.) See also, e.g., Parker v. Grant (In re Grant), 237 B.R. 97, 118

(Bankr. E.D. Va. 1999)(A doctor's representation that he was married, made in order to obtain a lease, was not a causal connection to later physical damages and lost rents. "The damages complained of rather appear to be the result of causes wholly unrelated to the misrepresentation of marital status.") and Kaufman v. Vamvakaris (In re Vamvakaris), 197 B.R. 228, 230 (Bankr. E.D. Va. 1996)(A debtor's misrepresentation that he had insurance was not the proximate cause of plaintiff's loss, which was theft.) Compare Hemi Group, LLC v. City of New York, N.Y., ___ U.S. ___, 130 S.Ct. 983, 989 (2010)(RICO case):

> [T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." [Holmes v. Securities Investor Protection Corporation, 503 U.S. 258 (1992),] at 268, 112 S.Ct. 1311. Proximate cause for RICO purposes, we made clear, should be evaluated in light of its common-law foundations; proximate cause thus requires "some direct relation between the injury asserted and the injurious conduct alleged." Ibid. A link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. Id., at 271, 274, 112 S.Ct. 1311.

In this adversary proceeding, Plaintiff has completely failed to prove how any misrepresentations by Lovato (such as they may have been) caused Plaintiff's loss. The loss stemmed from Torres' incompetence, plain and simple. And Plaintiff employed Torres not based on anything that Lovato did or did not do but rather because Torres offered such a low price for the work to be done, because Puckett helped persuade Plaintiff that

the Torres proposal was reasonable, and because Plaintiff's uncle favorably recommended Torres. Therefore, the Section 523(a)(2)(A) claim will be dismissed.

**B.    The "Fiduciary Duty Claim", section 523(a)(4).**

Section 523(a)(4) provides as follows:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;...

The limitations of §523(a)(4) are stated in Young:

Neither a general fiduciary duty of confidence, trust, loyalty, and good faith, see [Evans v. Pollard (In re Evans)], 161 B.R. [474] at 477 [(9th Cir. BAP 1993)], nor an inequality between the parties' knowledge or bargaining power, see [Kayes v. Klippel (In re Klippel)], 183 B.R. [252] at 260 [(Bankr. D. Kan. 1995)], is sufficient to establish a fiduciary relationship for purposes of dischargeability. "Further, the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy." [Allen v. Romero] (In re Romero)[, 535 F.2d 618, 621 (10th Cir.1976)] ; see also In re Evans, 161 B.R. at 477.

Id., at 1372. In the course of the trial, there was no proof whatever of any fiduciary relationship between Sanchez on the one hand and Lovato on the other hand. Nor was there any evidence or even a suggestion that Sanchez delivered any funds to Lovato as part of the project, or that Lovato had received any funds. Thus Allen v. Romero (In re Romero), 535 F.2d 618, 621 (10th Cir.1976) is not applicable. Thus Plaintiff has not met his burden to prove liability under §523(a)(4) and that count will be

dismissed.

**C.    The "Willful and Malicious Injury Claim", section 523(a)(6).**

Section 523(a)(6) provides as follows:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – (4) for willful and malicious injury by the debtor to another entity or to the property of another entity;...

In Berger v. Buck (In re Buck), 220 B.R. 999 (10th Cir. BAP 1998), the court noted that

in Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)[, d]isagreeing with the Tenth Circuit, among others, the Supreme Court ruled the provision [§523(a)(6)] requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. 523 U.S. at 62-63, 118 S.Ct. at 977-78.

Id., at 1004.  Sanchez had the burden to prove by a preponderance of the evidence that the debt was nondischargeable.  Id., citing Grogan v. Garner, 498 U.S. 279 (1991).  Nothing in the testimony or exhibits evidenced any such intent on the part of Lovato, and especially not to the level of a preponderance of the evidence.  Even the §523(a)(6) allegation in the Complaint failed to specifically describe any action by Lovato that would have comprised such behavior:

As set forth in the Judgment, and as specifically alleged above, the Debtor Rodolfo Lovato, without justification or excuse, and with full knowledge of the specific consequences of his conduct, acted notwithstanding, knowing full well that his conduct would cause particularized injury, in this case damages to the Plaintiff as set forth in the Judgment.

Doc 1, ¶20.  In fact, contrary to the statement in that paragraph, nothing in the Complaint or in the default judgment rendered by the Second Judicial District Court, County of Bernalillo, shows a willful or malicious injury to Plaintiff.  What the evidence showed at most was that Debtor was aware that Torres illegally obtained a building permit for the Sanchez project in the name of Debtor's corporation, initially without Debtor knowing anything about that, and that Debtor did not notify Plaintiff that the building permit had been illegally obtained, and in fact subsequently informed Plaintiff that the building permit was in the name of Debtor's company and therefore Debtor ought to work with Debtor.  But the subsequent action by Debtor occurred long after the damage had been mostly done, and in any event none of Debtor's actions exhibit an intent to harm Plaintiff.  Therefore the §523(a)(6) count will also be dismissed.

**Conclusion**

Contrary to the Court's initial conclusion, there is no basis for declaring whatever debt Lovato owes to Sanchez nondischargeable.  In consequence, the Court need not determine the amount of any damages that Lovato might have otherwise owed Sanchez.  For the foregoing reasons, the Court will enter a judgment dismissing the complaint with prejudice.



```
                        Honorable James S. Starzynski
                        United States Bankruptcy Judge
```

Date Entered on Docket:   February 11, 2011

Copies to:

Chris W Pierce
Hunt & Davis, P.C.
P.O. Box 30088
Albuquerque, NM 87190-0088

Jason Neal
320 Gold Avenue SW, Suite 300A
Post Office Box 8
Albuquerque, NM 87103-0008